UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Michael Vanartsdalen,<br><br>    Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin,[1] Acting<br>Commissioner of Social Security,<br><br>    Defendant. | Civil Action No. 5:12-2948-MGL-KDW<br><br><br>REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative action.

I. Relevant Background

 A. Procedural History

On January 30, 2006,[2] Plaintiff filed an application for DIB under Title II of the Act, 42 U.S.C. §§ 401-433. Tr. 329-34. After being denied both initially and on reconsideration, Tr. 148-49, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), *see* Tr. 181-84. On July 9, 2009, the ALJ conducted a hearing, taking testimony from Plaintiff and Vocational Expert ("VE") Janette Clifford. Tr. 93-129. The ALJ issued an unfavorable decision

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Carolyn W. Colvin for Michael J. Astrue as Defendant in this action.

[2] The Disability Determination and Transmittal lists a filing date of December 8, 2005. Tr. 148.

on November 2, 2009. Tr. 150-62. The Appeals Council accepted Plaintiff's request for review and on September 15, 2010, remanded the case back to the ALJ with additional instructions. Tr. 165-68. The ALJ held a second hearing on April 7, 2011, taking testimony from Plaintiff and VE Robert H. Ballantyne.[3] Tr. 130-47. The ALJ issued a second decision denying benefits on August 29, 2011. Tr. 33-44. The Appeals Council declined Plaintiff's request for review, Tr. 4-12, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on October 11, 2012. ECF No. 1.

    B.    Plaintiff's Background

Born January 1, 1966, Tr. 97, Plaintiff was 45 years old at the time of the ALJ's August 2011 decision. Plaintiff completed high school, and served four years in the military. Tr. 98. Plaintiff has past relevant work ("PRW") as a corrections officer. Tr. 100. Plaintiff's alleged onset date is December 10, 2004. Tr. 329.

    C.    The Administrative Proceedings

        1.    Plaintiff's Testimony

Plaintiff testified at the first administrative hearing on July 9, 2009. Tr. 93-129. Plaintiff testified that he had been unable to work since December 2004 due to various health issues including irritable bowel syndrome ("IBS"), hypertension, operations and pain in his knees, an injury to his left shoulder, and a bulging disk in his lower back. Tr. 103-04. Plaintiff testified that the IBS caused him both diarrhea and constipation, and he averaged a bout of diarrhea twice a week, lasting up to three hours. Tr. 107-08. Plaintiff stated that he was having panic attacks on

---

[3] The hearing transcript incorrectly identifies the VE as Dr. Valentine. As noted on his resume, the VE's surname is Ballantyne. Tr. 322.

average three or four times a week. Tr. 108. Plaintiff also testified that he was having problems concentrating and making decisions. Tr. 110. Plaintiff stated that he has side effects from his medications that include diarrhea, constipation, dizziness, lack of concentration, problems sleeping, and sleepiness. Tr. 112. Plaintiff stated that his activities of daily living ("ADLs") included some reading, watching TV, paying bills, helping his wife with grocery shopping, and taking care of his children. Tr. 114. Plaintiff testified that the only household chore he did on a regular basis was cutting his grass using his riding lawnmower. Tr. 113-14. Plaintiff stated he was able to attend to his personal needs. Tr. 114.

At the second administrative hearing held on April 7, 2011, Plaintiff and VE Ballantyne testified. Tr. 130-47. Plaintiff testified that since the last hearing he has experienced an increase in his symptoms related to panic disorder, anxiety, and depression. Tr. 133. With regard to his physical condition, Plaintiff testified that he has been dealing with "flare ups." Tr. 135. He also testified that he was still having problems with concentration. *Id.* Plaintiff stated that he has problems sleeping, and most of the time feels fatigued. Tr. 138-39. Plaintiff testified that he was incapable of working even a simple job, eight hours a day, five days a week, because his symptoms were "troublesome to the point that [he] would not be reliable." Tr. 139.

2.     VE Ballantyne's Testimony

The ALJ asked the VE to assume a hypothetical individual between the ages of 38 and 46, with a high school education, who was able to do a full range of light work, no climbing ladders, ramps, stairs, ropes, ladders or scaffolds; who could do simple, routine, and repetitive tasks; low stress for production; low interaction; and limited interaction with the public. Tr. 142. The ALJ asked the VE if there were light jobs or sedentary jobs that such a person could

perform. *Id.* The VE identified the jobs of clerical office helper, library aide, and records clerk. Tr.142-43. The ALJ modified the hypothetical to add no kneeling, crouching, or crawling, and asked what affect those additional limitations would have on the available jobs. Tr. 143. The VE testified those limitations would not affect any of the identified jobs. Tr. 144. The ALJ added a limitation of avoiding all exposure to extreme cold and hazards, and the VE noted the identified jobs were "all performed indoors and usually in air treated units." *Id.*

Plaintiff's attorney asked if the hypothetical individual would be capable of performing the jobs identified if he was "unable to meet competitive standards for remembering work like procedures, maintain attention for [a] two hour segment, sustain an ordinary routine without special supervision, complete a normal workday or workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 144. The VE testified that "certainly all of those conditions existing in one individual would probably not make it possible for them to perform." *Id.* Plaintiff's attorney asked whether the hypothetical person would be capable of maintaining sustained full-time employment if he were to miss more than four days of work per month due to impairments or treatment of impairments. Tr. 145. The VE responded that "perhaps with special arrangement if they're a highly productive employee but normally, no." *Id.*

II.   Discussion

   A.   The ALJ's Findings

In his August 29, 2011, decision, the ALJ made the following findings of fact and conclusions of law:

>   (1)   The claimant last met the insured status requirements of the Social Security Act through December 31, 2009.

(2) The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 10, 2004 through his date last insured of December 31, 2009 (20 CFR 404.1571 *et seq*.).

(3) Through the date last insured, the claimant had the following severe impairments: shoulder and knee injury, obesity, post-traumatic stress disorder and depression (20 CFR 404.1520(c)).

(4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(5) After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he cannot climb ropes or ladders; he cannot kneel, crouch or crawl; he can sustain no exposure to extreme cold or hazards; and he is limited to simple routine repetitive tasks with low stress, low production and low interaction with others.

(6) Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

(7) The claimant was born on January 1, 1966 and was 43 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

(11) The claimant was not under a disability, as defined in the Social Security Act, at any time from December 10, 2004, the

5

> alleged onset date, through December 31, 2009, the date last insured (20 CFR. 404.1520(g)).

Tr. 35-43.

    B.    Legal Framework

        1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW; and (5)

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration

whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

---

to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his

2.	The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational.  *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision."  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

---

impairment is disabling at Step 3).

C.  Analysis

Plaintiff argues that the ALJ erred by: (1) giving little weight or failing to weigh the opinions of Plaintiff's treating physicians; and (2) failing to consider all of Plaintiff's impairments and providing an adequate discussion to support his RFC assessment. Pl's Br. 27, 36, ECF No. 12.

1.  Treating Physician Rule

Plaintiff argues the ALJ did not appropriately consider the opinion of Plaintiff's treating physician, Kenneth E. Nunnery, M.D., and failed to evaluate and weigh the opinion of Hayne D. McMeekin, M.D. Pl.'s Br. 30, 34. The Commissioner defends the ALJ's decision arguing that because Dr. Nunnery's opinion was unsupported by clinical findings or objective evidence, it was not due controlling weight. Def.'s Br. 15, ECF No. 14. The Commissioner further asserts that the ALJ properly considered Dr. McMeekin's opinions, and regardless, Plaintiff did not show any resulting harm from any failure by the ALJ to assign a weight to the opinions. *Id.* 16-19.

If a treating source's medical opinion is "well-supported and 'not inconsistent' with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96-2p; *see also* 20 C.F.R. § 404.1527(d)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). The Commissioner typically accords greater weight to the opinion of a claimant's treating medical sources because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §

404.1527(c)(2). "Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654; 20 C.F.R. § 404.1527(d). The rationale for the general rule affording opinions of treating physicians greater weight is "because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Johnson*, 434 F.3d at 654 (quoting *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001)).

          a.        Dr. Nunnery

After the ALJ issued his first unfavorable decision finding that Dr. Nunnery's opinion was without substantial support from other record evidence, on September 15, 2010, the Appeals Council remanded the case to the ALJ finding the decision did not contain "an adequate evaluation of the medical opinions of [Dr. Nunnery], a treating source. Tr. 166. The Appeals Council instructed the ALJ to "identify the other evidence that it finds more persuasive and why it is more persuasive." *Id.*

In the ALJ's second decision, dated August 29, 2011, in addition to restating his prior finding, the ALJ noted that in a second opinion letter dated April 19, 2010, Dr. Nunnery concurred with the disability opinions of VE Rosalyn Pierce and orthopedist Dr. Robert Dunn whose opinions the ALJ found to be unclear. *Id.* Further noting that Dr. Nunnery "failed to adequately substantiate a traumatic event as the basis" for Plaintiff's PTSD diagnosis, the ALJ found that "Dr. Nunnery failed to provide clinical findings to support his opinion that the claimant was disabled." *Id.* The ALJ assigned Dr. Nunnery's opinions "limited weight." *Id.* The

10

ALJ referenced Dr. Nunnery's finding that Plaintiff's orthopedic injuries, IBS, panic attacks, and depression prevented Plaintiff from working and the ALJ noted that Plaintiff's "orthopedic injuries showed improvement and his mental health impairments were not as severe as alleged." *Id.* In support of this finding, the ALJ cited to an opinion of Dr. Hayne McMeekin that noted Plaintiff's medications lessened his anxiety, and to Dr. McMeekin's note that Plaintiff was not clinically depressed. Tr. 40.

      The undersigned finds that the ALJ did not follow the instructions of the Appeals Council to identify the other evidence he found more persuasive than Dr. Nunnery's opinion, and discuss why it is more persuasive. Although the ALJ cited to opinions of Dr. McMeekin to undermine Dr. Nunnery's opinions, the undersigned notes that the ALJ did not cite other portions of those same opinions that support Dr. Nunnery. For example, Dr. McMeekin completed a Mental RFC Questionnaire on November 17, 2010, that, in addition to stating Plaintiff's medications have helped him, also indicates Plaintiff has PTSD, has difficulty leaving home, and includes a checklist of symptoms indicative of severe mental impairments. Tr. 839-43. Dr. McMeekin noted that his prognosis was "guarded." Tr. 839. In the May 21, 2010 summary referenced by the ALJ, Dr. McMeekin's complete statement was: "*At this point* he is not clinically depressed. He is taking his antidepressant on a regular basis." Tr. 775 (emphasis added). In that report Dr. McMeekin's impression of Plaintiff was "Post Traumatic Stress Disorder presenting with Panic Disorder and Chronic Depression." *Id.* The ALJ stated that Dr. Nunnery failed to substantiate a traumatic event for his diagnosis of PTSD. However, Dr. Nunnery is the physician who referred Plaintiff to Dr. McMeekin to be diagnosed for depression and PTSD. Tr. 744. In his evaluation, Dr. McMeekin provided the basis for the diagnosis of PTSD. Tr. 774.

11

Under the Treating Physician Rule, the Commissioner would generally give more weight to the opinions of treating and examining medical sources. 20 C.F.R. § 404.1527(c)(l)-(2). Where the opinions of the treating physician are not given controlling weight, the Commissioner is to evaluate each opinion in light of a series of enumerated factors, including the length of treatment, the nature of the treatment provided, the supportability of the opinion, the consistency of the opinion, and whether the treating physician is specialized. *Id.* § 404.1527(c)(2)-(5). Here, the ALJ's analysis is clearly inconsistent with the mandates of the Treating Physician Rule. The ALJ fails to address the factors set forth in the Treating Physician Rule; the ALJ's rejection of Dr. Nunnery's opinions appears to be based primarily on the premise that his opinions lack clinical support. However, as discussed above, the medical record contains evidence that supports Dr. Nunnery's opinions.

b.    Dr. McMeekin

Social Security Regulation 96-2p requires that an unfavorable decision contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. Regulation 96-8p requires that "the RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "*persuasive* contrary evidence." *Mastro*, 270 F.3d at 176 (emphasis added).  In undertaking review of the

ALJ's treatment of a claimant's treating sources, the court focuses its review on whether the ALJ's opinion is supported by substantial evidence.

The ALJ made a brief reference to the opinion of Dr. McMeekin to discount the opinion of Dr. Nunnery, but did not otherwise evaluate or weigh Dr. McMeekin's opinion. The Commissioner argues that "[w]hile the ALJ did not spell out in detail his assignment of weight to Dr. McMeekin's opinions, he did adequately explain how he accounted for them." Def.'s Br. 19. According to the policy interpretation of SSR 96-2p, even if a treating source's opinion is not entitled to controlling weight, the opinion is "still entitled to deference and *must be weighed* using all of the factors provided in 20 CFR 404.1527 and 416.927." SSR 96-2p ("When a Treating Source's Medical Opinion is not Entitled to Controlling Weight") (emphasis added). Additionally, SSR 96-2p provides that when the decision is a denial, it "*must contain specific reasons for the weight given* to the treating source's medical opinion, supported by the evidence in the case record, and *must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave* to the treating source's medical opinion and the reasons for that weight." SSR 96-2p ("Explanation of the Weight Given to a Treating Source's Medical Opinion") (emphasis added).

The ALJ's decision contains no analysis of Dr. McMeekin's evaluation and treatment of Plaintiff. Other than countering that "it was not possible for the ALJ to assign overall weight to the opinions and evaluations, given their inconsistency[,]" the Commissioner offers no explanation for the ALJ's failure to address Dr. McMeekin's opinion in his decision. The regulations provide that every medical opinion will be considered and evaluated—regardless of its source. *See* 20 C.F.R. § 404.1527 (a)-(b).

Having reviewed the record evidence, the undersigned finds that remand for further consideration of the record opinions is appropriate. The ALJ should be required to fully discuss all aspects of the opinions of Dr. Nunnerly and Dr. McMeekin, and discuss the weight attributed to each based on the factors set forth in 20 C.F.R. § 404.1527. In making this recommendation, the undersigned is mindful it is not to weigh evidence or substitute its judgment for that of the Commissioner, but is to determine whether the ALJ's weighing of the evidence is supported by substantial evidence in the record. *See generally Hays v. Sullivan*, 907 F.2d at 1456 (noting judicial review limited to determining whether findings supported by substantial evidence and whether correct law was applied); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator."); *Jordan v. Califano*, 582 F.2d 1333, 1335 (4th Cir. 1978) ("A bald conclusion, unsupported by reasoning or evidence, is generally of no use to a reviewing court [.]"); *Arnold v. Sec'y of H.E.W.*, 567 F.2d 258, 259 (4th Cir. 1977) (noting that, unless Commissioner "has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.") (internal quotation omitted).

Based on the record evidence available, the court cannot find that the ALJ appropriately weighed and considered the opinions of Dr. Nunnerly and Dr. McMeekin. Accordingly, the undersigned cannot find the Commissioner's decision is based on substantial evidence. Remand for further consideration of the opinions of Dr. Nunnerly, Dr. McMeekin, and Plaintiff's other treating and examining professionals is recommended.

2.      Plaintiff's Remaining Allegations

Plaintiff also claims the ALJ erred in assessing Plaintiff's RFC and evaluating Plaintiff's impairments in combination. Consideration of each of these allegations of error necessarily requires close consideration of Plaintiff's RFC. Because the undersigned recommends remand, detailed analysis of these other allegations of error is not possible at this point. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on a particular ground and declining to address claimant's additional arguments). Accordingly, the undersigned does not consider Plaintiff's remaining allegations of error at this time.

III.    Conclusion and Recommendation

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action as detailed within.

IT IS SO RECOMMENDED.

January 16, 2014                                                          Kaymani D. West
Florence, South Carolina                                           United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**